UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RALPH JAMES DUNTON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARCTIC CAT, INC., and | ) | Civ. No. 06-153-B-W |
| ARCTIC CAT SALES, INC., | ) | |
| | ) | |
| Defendants/Third-Party | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROLAND WORTMAN, | ) | |
| | ) | |
| Third-Party Defendant | ) | |

**AMENDED[1]**
**MEMORANDUM OF DECISION ON MOTIONS TO EXCLUDE**
**EXPERT TESTIMONY**

Ralph Dunton contends that two of Arctic Cat's experts must be precluded from testifying about an opinion they have to explain why the suspension over the subject snowmobile's left ski was compressed to the breaking point.  (Pl.'s Mot. to Exclude, Doc. No. 44.)  Additionally, Arctic Cat contends that a warden whom third-party defendant Roland Wortman designated as an expert must be precluded from offering any accident reconstruction opinion or any opinion as to product defect or how a product defect may have caused the accident in question.  (Defs.' Mot. to Exclude, Doc. No. 43.)

---

[1]  The only change is to correct a typographical error on page two.  The word "break" is corrected to be the word "brake."

### The Collision

Based on the summaries supplied in their briefs, the parties appear to agree on most of the basic background facts.  On February 15, 2001, Ralph Dunton was traveling on an Arctic Cat snowmobile along a roadway in Rockport.  Third-Party Defendant Roland Wortman was operating a pickup truck equipped with a snowplow and pulled that vehicle into the roadway as Dunton was approaching.[2]  Dunton released the throttle on the snowmobile and locked up the brake on the rear track.  The snowmobile began to skid on the roadway and rotated in a counter-clockwise direction as it approached the pickup.  Meanwhile, Wortman had moved into the roadway with his plow facing in the direction of the oncoming snowmobile.  The right rear of the snowmobile collided with the plow.  After the collision, witnesses observed that the snowmobile's left ski was pointing more than 90 degrees to the left, while the right ski was aimed slightly to the right.[3]  Subsequent examination revealed that steering stops (stop tabs)[4] on the left and right sides were broken and that the left-side suspension had been over compressed so that the left tie rod ball joint passed over the "A-arm" of the suspension.  None of the witnesses observed whether these steering and suspension components failed prior to, or as a consequence of, the collision.

Dunton maintains that the accident was caused by the failure of a left steering stop, a device that is designed to limit how far the skis can turn to the left (there is a corresponding stop, or "stop tab," on the right side as well).  (Pl.'s Mot. to Exclude at 2,

---

[2]       There is evidence to the effect that there was a rise or crest between the snowmobile and pickup when Wortman pulled onto the roadway, and that Dunton was traveling roughly 40 miles per hour, but those assertions may be disputed and they are not material to the pending motions, in any event.

[3]       There is a picture available on the docket at entry number 53-5.

[4]       Steering stop tabs are designed and intended to prevent damage to the snowmobile's steering linkage from overloading by preventing movement beyond 41 degrees.  (Christopherson Aff. ¶ 3, Doc. No. 54 (affirming Christopherson Designation ¶ 11, Doc. No. 54-2).)

Doc. No. 44.)  His theory is that this alleged failure enabled the skis to become locked in an extreme, left-turning position, so that he could not regain control of the snowmobile after it began its counterclockwise spin.  (Id.)  A slightly more involved accounting posits that the "over-rotated angle of the left ski allowed it to serve as a lever that forced the ball join over the A-arm," which "made the snowmobile impossible to control and caused the collision."  (Pl.'s Mot. to Exclude at 2.)  Arctic-Cat, on the other hand, believes that the stop tab and suspension failure was a consequence rather than cause of the collision.  It maintains that over-compression of the left-side front suspension and damage to the ski and suspension occurred because of forces originating from the impact between the snowmobile's rear-right side and the snowplow.  Dunton's motion to exclude targets Arctic Cat's experts' proposed testimony to the extent the experts attempt to articulate a theory as to how the forces arising from the collision could explain the damage.  (Id. at 3-4.)  Those opinions are discussed in more detail in the discussion below.

Warden Michael Favreau of the Maine Department of Inland Fisheries & Wildlife responded to the scene and prepared an accident report.  During his deposition, Warden Favreau voiced an opinion that the snowmobile's ski "cocked to the left" prior to the accident, preventing Mr. Dunton from avoiding the snowplow.  None of the parties ever designated Warden Favreau to offer this opinion.  However, after Warden Favreau's deposition, Roland Wortman designated Favreau as an expert who would offer an opinion that Mr. Wortman did nothing improper to cause or contribute to the accident. Arctic Cat's motion to exclude requests an order precluding any party from eliciting from Warden Favreau any accident reconstruction testimony and any opinion impacting the question of product defect, such as when and how the left ski and suspension failed and

whether the failure was a cause or a consequence of the collision.  (Defs.' Mot. to

Exclude at 1-3.)

### Discussion

Pursuant to Rule 702 of the Federal Rules of Evidence:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or otherwise, if (1)
> the testimony is based upon sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the witness has applied
> the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme

Court discussed the gate-keeping role federal judges play under Rule 702 in screening

unreliable expert opinion from introduction in evidence.  Id. at 597. That role is "to

ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the

task at hand.'"  United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002).  The proponent

of the expert opinion must demonstrate its reliability, but need not prove that the opinion

is correct.  Id. at 63.  "Once a trial judge determines the reliability of the expert's

methodology and the validity of his reasoning, the expert should be permitted to testify as

to inferences and conclusions he draws from it and any flaws in his opinion may be

exposed through cross-examination or competing expert testimony."  Brown v. Wal-Mart

Stores, Inc., 402 F. Supp. 2d 303, 308 (D. Me. 2005).  "Vigorous cross examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the

traditional and appropriate means of attacking shaky but admissible evidence."  Daubert,

509 U.S. at 596.

**A.     Arctic Cat's theory concerning the damage to the left-side steering and suspension components**

Mr. Dunton asks the Court to preclude Arctic Cat's experts from testifying that the left-side suspension and ski were damaged as a consequence of the collision.  (Defs.' Mot. to Exclude, Doc. No. 44.)  The experts in question are H.P. Christopherson, a mechanical engineer and product designer, and Fred Bernier, a snowmobile operation expert, a former supervisor of product durability testing, and a present manager of product testing and certification with Arctic Cat.  As indicated in the Christopherson expert disclosure, in the simplest sense Mr. Christopherson's opinion is that "[a]ll damage to the snowmobile is consistent with the collision with the truck's plow blade, and none of it is consistent with a product design or manufacturing defect causing the collision."  (Christopherson Disclosure at 2, Doc. No. 54-2.)  In addition to various opinions concerning operator negligence and the adequacy and safety of Arctic Cat's stop tab design, as well as expert testimony concerning the purpose and design of snowmobile steering and suspension components, Arctic Cat designated Mr. Christopherson to offer the following opinion:

> At the time of impact, the rear end of the subject snowmobile rose up at least 1 to 2 feet with the right side of the snowmobile rotated upwardly. This caused the weight of the snowmobile and the operator to be all directed downwardly on the left ski, driving it downward into the snow/ice road surface.  This also resulted in compression of the left front suspension, so that the bottom of the ball joint/tie rod assembly end connected to the spindle top arm could be forced over the top of the rearward bar of the upper A-arm without breaking or severely damaging components.  The sequence of events (both from the perspective of the truck and the snowmobile) is pictured in the April 2007 photos contained on one of the CD-ROMS being produced.

(Id. ¶ 19.)  Mr. Bernier's designation is consistent with Mr. Christopherson's.  In addition to anticipated testimony concerning Arctic Cat's product testing and snowmobile operation standards, Bernier is designated to testify that the damage to the snowmobile could not have arisen from normal operation and that, based on his experience and testing, the suspension had to be fully collapsed in order for the ball joint to pass over the A-arm, which could only have occurred in connection with the collision, not in connection with any of the pre-accident handling or operation described by Mr. Dunton. (Bernier Disclosure at 4, ¶¶ 3-4, Doc. No. 53-2.)  Regarding the collision, Mr. Bernier's designation indicates:

> Mr. Bernier will provide opinions and testimony concerning the condition and positions of the left ski and attached components, including the ball joint, tie rod upper and lower A-arms, shocks and springs observed after the accident, including that the cause of the condition and position of the components was the result of the subject snowmobile impacting the snow plow blade on Wortman's truck.

(Id. at 4, ¶ 4.)

At his deposition Mr. Christopherson testified that he believed the left front ski's steering and suspension components were damaged as a result of the right rear of the snowmobile colliding with the slightly elevated snow plow.  Christopherson opined that, upon impact, the right rear of the snowmobile was lifted or rebounded in an upward fashion, which forced the left front ski into the ground, breaking the steering stop and over-compressing the suspension so that the ball joint was able to pass over the A-arm. (Christopherson Dep. at 66-67, Doc. No. 52-2.)  Mr. Dunton argues that this opinion is unreliable because there is no eye-witness testimony that the rear of the snowmobile actually lifted off the ground and because the experts have neither performed any mathematical computations to explain the amount and direction of force that impacted the

snowmobile in the collision or subjected their theory to testing.  (Pl.'s Mot. to Exclude at 4, 7-8.)  Although Dunton cites Mr. Wortman's eyewitness account that the snowmobile bounced off the plow in a clockwise direction, Dunton argues that the rear end of the snowmobile could not possibly have risen because the plow was elevated 15 to 18 inches off the ground and a portion of the snowmobile would have passed under the plow.  (Id. at 7.)  Dunton says that the experts are applying physics in an evidentiary vacuum.  (Id. at 9.)

Both of the challenged experts have inspected the subject snowmobile and the scene of the accident.  (Christopherson Depo. at 13; Bernier Depo. at 127.)  They also reviewed Warden Favreau's accident report, witness statements and witness depositions. (Christopherson Depo. at 89; Bernier Depo. at 46.)  Their assessment of the damage to the left ski and related steering and suspension components is based on the following observations and reasoning:

a.      that the center of gravity of the snowmobile is where the operator is seated, and that the clockwise rebound or bounce described by Mr. Wortman would have involved rotation around that center of gravity (Christopherson Depo. at 130; Christopherson Aff.[5] ¶ 3 (affirming statements in his expert disclosure related to his work on this case, including Christopherson Disclosure ¶ 19));

b.      that lifting was likely to be caused because of the arc of the snowplow face, which would have functioned as a ramp when the rear of the snowmobile impacted it (Christopherson Aff. ¶ 3 (affirming Christopherson Disclosure ¶¶ 18-19));  Bernier Depo. at 165;

---

[5]        Doc. No. 54.

c.      that some lift in the rear of the snowmobile was consistent with Mr. Wortman's testimony that tools on the back of the snowmobile were thrown up into the air on impact (Christopherson Depo. at 66;  Bernier Depo. at 136);

d.      that the right-rear impact and resulting lift would have forced the left ski into the snow/ice road surface, fully compressing the suspension and applying substantial rotational force to the left ski (Christopherson Aff. ¶ 3 (affirming Christopherson Designation ¶ 19);  Christopherson Depo. at 66-67, 130);

e.      that the condition of the left ski and the compression damage would not arise from the pre-collision snowmobile operation described by witnesses (Christopherson Aff. ¶ 3 (affirming Christopherson Disclosure ¶ 20);  Christopherson Depo. at 57, 68-69, 74-75, 79-80);

f.      that Mr. Dunton has no recollection of seeing the left ski turn beyond the limit of the stop tab prior to the accident (Dunton Depo. at 80, Doc. No. 43-2);

g.      that exemplar testing demonstrates that the front suspension had to be fully compressed in order for the ball joint/tie collar to pass over the upper part of the A-arm (Christopherson Aff. ¶ 3 (affirming Christopherson Designation ¶¶ 15-16);  Christopherson Depo. at 144, 162-63, 236); and

h.      that a snowmobile's front suspension does not significantly compress when the track brake is applied, unlike when an automobile's brakes are applied, so that Mr. Dunton's application of the track brake would not have caused the front suspension to be fully compressed prior to the collision (Christopherson Depo. at 82-85).

Mr. Dunton's challenge is based on subsection 1 of Rule 702 because he contends that the experts are applying their methodologies in the absence of *any* ascertainable or

quantifiable facts.  I find this argument unpersuasive.  The opinion does rely on objective data consisting of witness testimony about the rotation of the snowmobile prior to impact (counterclockwise) and following impact (clockwise), the report that the snowmobile bounced away from the snowplow, the existence of an arced snowplow, the vertical trajectory imparted to the tools, the diametrical relationship between the point of impact (right-rear) and compression (left-front), the absence of any observation of ski or suspension failure prior to impact, and exemplar testing addressed to the need for full compression of the suspension in order for it to fail as it did.  These are sufficient data from which the experts may opine that the damage to the steering and suspension components was more likely the consequence than the cause of the collision.  Although it is not entirely clear how Arctic Cat's experts calculate that the snowmobile's rear lifted "at least" 1 to 2 feet, as opposed to some lesser degree, or why 1 to 2 feet of lift is necessary to cause the damage that arose, their conclusion that there was lifting in the rear, and corresponding compression in the front, as the snowmobile rotated about its center of gravity is not a conclusion drawn in an evidentiary vacuum.  The available facts and expert-supplied knowledge coalesce here in a reasonably reliable fashion to pass muster under Rule 702.  All of Mr. Dunton's particularized objections, such as the height of the snowplow off the ground and the lack of any witness account describing lifting of the rear of the snowmobile, go to weight rather than admissibility.

**B.     Warden Favreau's opinions**

Mr. Wortman, who designated Warden Favreau as an expert concerning his comparative fault, does not contest Arctic Cat's motion to preclude Warden Favreau from offering product defect opinions.  (Third-Party Def.'s Response at 3-4, Doc. No. 48.)  In

his responsive brief, Wortman assures the Court that he will not seek to offer any product defect opinions through Warden Favreau, including any opinion that a product defect caused or contributed to the collision.  (Id.)  Wortman is silent with respect to any accident reconstruction testimony, stating only that he consents to an order limiting Favreau's testimony to the topics stated in his designation.  The designation states the following about Favreau's anticipated testimony.

> Michael P. Favreau will testify at trial that no improper conduct on the part of Roland Wortman caused, or contributed to causing, the accident involving Ralph James Dunton on February 15, 2001 on Lake Shore Road in Rockwood, Maine.  Investigation indicates that Roland Wortman was operating a pickup truck with a snowplow attached, in the up position, on McIver's Road and came to a stop before entering Lake Shore Road which it intersects at an angle as reflected in the Boat and RV Accident Report. Traveling on McIver's Road, Roland Wortman had come to a stop and then started to make his left turn from McIver's Road onto Lake Shore Road after both he and his passenger had determined that there were no oncoming vehicles.  Both of these roads are relatively narrow, dirt roads which, at the time, were plowed but covered with snow and ice.  There were no lanes, as such, on Lake Shore Road.  Immediately on seeing the approaching eastbound snowmobile being operated by Ralph James Dunton, Wortman, confronted by an emergency, pulled to the left and was stopped with the left side of his truck and plow very close to the south edge of the plowed portion of Lake Shore Road.  In this position, there was ample room for Dunton to pass the stopped Wortman vehicle by passing in the space between the right edge of the plow and the plowed northerly edge of the Lake Shore Road.  The sequence of events described by Roland Wortman, Jr. in his statement of February 15, 2001, made out at the accident scene, was confirmed in essential detail by James McMahon who was a passenger in the right front seat of the Wortman vehicle.

> Warden Favreau will express as his opinion that Mr. Wortman took appropriate evasive action under all the facts and circumstances of this case.

(Favreau Designation, Doc. No. 48-4.)  This designation extends into the territory of "accident reconstruction" in only the most basic sense and I agree with Wortman that nothing in this designation appears objectionable.  Arctic Cat's motion and Wortman's

response are easily reconciled with an order precluding any opinion about the existence or causative significance of any defects in the snowmobile.

Despite the straight-forward nature of this motion, Mr. Dunton asserts that the Court should not issue any order that might restrict his ability to get at other matters in the context of cross-examination. Dunton notes that the term "accident reconstruction" is broad and that Favreau should not be precluded from offering his opinion concerning what the accident scene revealed to him. He argues:

> Assuming that Warden Favreau has a proper foundation to offer his conclusions on causation, he will have to testify about his investigation of events leading up to the collision. This inquiry will necessarily include Favreau reconstructing the accident from the evidence he gathered. Based on this reconstruction, Favreau made certain findings. Plaintiff is entitled to explore these conclusions on cross-examination. Artificially limiting the scope of Dunton's cross-examination would be manifestly unjust and leave the jury with the false impression that Favreau blamed Dunton for the collision.

(Pl.'s Objection at 2-3, Doc. No. 49.) In my view, the proper resolution of this motion still requires an order precluding Favreau from offering any opinion on product defect or the causative significance of any such defect for the simple reason that he is not qualified to offer testimony pertaining to product defect and has not been designated to opine on that topic. Such an order would not close the door on testimony about the accident scene and what Favreau might have deduced from an observation of the scene because it would leave for later consideration at trial any more limited "accident reconstruction" testimony that might be within Warden Favreau's knowledge and expertise. It would simply prevent Mr. Wortman and Mr. Dunton from introducing inadmissible product defect testimony through an undesignated witness on matters that are quite clearly beyond his

expertise.  Accordingly, I grant Arctic Cat's motion to exclude any product defect testimony on the part of Warden Favreau.

**C.      The request for oral argument**

Mr. Dunton has requested oral argument on his motion to exclude (Mot. for Oral Arg./Hr'g, Doc. No. 45), which motion has been referred to me in conjunction with the motion to exclude.  Local Rule 7(f) grants this Court discretion whether to allow oral argument.  I conclude that the issues presented by the motion are sufficiently clear based on the parties' written submissions and that an oral argument is not warranted.  The motion for oral argument is denied.

**Conclusion**

For the reasons stated above, I DENY the plaintiff's motion to exclude expert testimony (Doc. No. 44) and GRANT, IN PART, Arctic Cat's motion to exclude (Doc. No. 43), by precluding any product defect testimony from Warden Favreau.  The motion for oral argument (Doc. No. 45) is DENIED.

**<u>CERTIFICATE</u>**

Any objections to this decision shall be filed in accordance with Fed.R.Civ. P. 72.

***So Ordered.***

November 1, 2007                              /s/ Margaret J. Kravchuk
                                                     U.S. Magistrate Judge